UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID CZOPEK, CHRISTOPHER
KNOTT, DAVID EASLICK and
JONATHAN RED,

      Plaintiffs,

v.                                    Case No: 8:14-cv-675-T-36TBM

TBC RETAIL GROUP, INC.,

      Defendant.

_____/

## ORDER

This matter comes before the Court upon the Defendant's Motion to Compel Arbitration for Opt-In Plaintiffs Keith Sharpe and John McClelland (Doc. 16), Plaintiffs' Response thereto (Doc. 24), and Defendant's Reply (Doc. 47). In the motion, Defendant states that opt-in Plaintiffs Keith Sharpe and John McClelland have executed binding arbitration agreements which prevent them from participating in this lawsuit. Plaintiffs argue that the arbitration agreements should not be enforced because they were coerced to sign them. An evidentiary hearing was held on September 29, 2014. The Court, having considered the parties filings, arguments and evidence, and being fully advised in the premises, will grant Defendant's Motion to Compel Arbitration for Opt-In Plaintiffs Keith Sharpe and John McClelland for the following reasons.

## I.    Background

On or about March 18, 2014 Plaintiffs filed this collective action pursuant to 29 U.S.C. § 216(b), alleging, among other things, violations of the Fair Labor Standards Act 29 U.S.C. §§ 201 *et seq*. (the "FLSA"). See Doc. 1. The named Plaintiffs are current and former employees of Defendant, TBC Retail Group, Inc., d/b/a Tire Kingdom (hereinafter referred to as "Defendant" or

"Tire Kingdom") who allege that they were: (a) required to work off the clock; (b) forced to shave employee time records; (c) not compensated at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) in a work week; (d) improperly paid via debit cards; (e) improperly classified as exempt from overtime compensation; and (f) not properly paid minimum wage compensation for all hours worked.

Plaintiffs' counsel sent and Defendant received the initial demand letter regarding the present lawsuit on or about March 13, 2014, seeking an amicable resolution of the matter without court intervention. *See* Doc. 24-1. On the same day, March 13, 2014, Defendant issued a memorandum describing a "Mutual Agreement to Arbitrate Claims and Waiver of Class/Collective Actions" (hereinafter referred to as the "Arbitration Agreement") to all of its current, non-California employees. *See* Doc. 24-2. Defendant presented evidence that the decision to send this memorandum and the Arbitration Agreement to employees was made well before the demand letter was received. *See* Doc. 47-1 at ¶¶ 2-7. In February 2013, Defendant's senior executives decided to implement an arbitration agreement. *See* Doc. 16-1. In October and November 2013, all of Defendant's new hires and California employees were required to sign an arbitration agreement. *Id.*

Employees were given the opportunity to review a .pdf version of the Arbitration Agreement through the employee portal. The last page of the Arbitration Agreement states:

> YOUR SIGNATURE BELOW ATTESTS TO THE FACT THAT:
>
> 1. YOU HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS.
>
> 2. YOU ARE SIGNING THIS AGREEMENT VOLUNTARILY.
>
> 3. YOU ARE NOT RELYING ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY EXCEPT THOSE CONTAINED IN THIS AGREEMENT.

2

4. YOU UNDERSTAND THAT BY SIGNING THIS AGREEMENT, YOU ARE GIVING UP THE RIGHT TO HAVE CLAIMS DECIDED BY A COURT OR JURY.

5. YOU HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL AT YOUR EXPENSE.

APPLICANT/EMPLOYEE                    COMPANY

_____              _____
Signature                            Title

_____
Print Name

_____
Employee Number

_____
Date

Doc. 16-2 at p. 4. When an employee reached the last page of the .pdf version of the Arbitration

Agreement on the employee portal, he was presented with this statement at the bottom of the

screen:

> I, [employee name], hereby certify that I have read the Mutual Agreement to Arbitrate.
>
> Please enter your Employee Number and last four digits of your Social Security Number as your electronic signature.

Doc. 47-1 at p. 51. Below this statement were two boxes for employees to enter their employee

numbers and the last four digits of their Social Security numbers, along with a button labeled

"Acknowledge." *Id*. Defendant considered the Arbitration Agreement to have been electronically

signed by each employee that filled in those boxes and clicked on the "Acknowledge" button. As

reflected in the first sentence of the Arbitration Agreement, signing it was a condition of continued

employment with Defendant. *See* Doc. 16-2.  March 21, 2014 was the deadline to sign the

3

Arbitration Agreement.  *See* Doc. 16-3.  Employees who refused to sign the Arbitration Agreement were terminated from employment.

McClelland testified that his store manager, Rigo Rodriguez, held a meeting in his store on or about March 18, 2014, with about 7-8 employees to inform them all about the Arbitration Agreement. Rodriguez told the employees how to access the agreement and how to complete the acknowledgement process. McClelland testified that the agreement would not load and he only saw a blank screen, but completed the acknowledgement anyway because he was told he would lose his job if he did not complete it by the end of his shift. McClelland further testified that he did not read the Agreement. On or about March 18, 2014, McClelland electronically signed the Arbitration Agreement. *See* Doc. 16-5 at p. 1. On the same day, McClelland signed a consent to join the instant lawsuit and a declaration regarding his acknowledgement of the Arbitration Agreement. *See* Doc. 24-4. McClelland's declaration stated that he could not read the contents of the document when he electronically signed it. Doc. 24-4 at p. 1-2. However, the declaration also indicates that McClelland was provided with a copy of the agreement prior to signing the declaration on March 18, 2014. *Id.* McClelland continued to work for Defendant after March 18, 2014 and did not seek to rescind his signature – despite having received a copy of the Arbitration Agreement from Plaintiffs' counsel.  McClelland is still employed by Defendant.

Sharpe, who worked at the same store as McClelland, testified that he was not present for the meeting on March 18, 2014 but that when he returned to work McClelland asked him if he had signed the new paperwork. Sharpe asked Rodriguez about the paperwork and Rodriguez told him to access the agreement on the employee portal and sign it. Sharpe reviewed the agreement but refused to sign it because the last page indicated that the agreement was being signed "voluntarily." Sharpe believed this verbiage to mean that he did not have to sign it to remain employed. On March

24, 2014, Rodriguez told Sharpe that he would lose his job if he did not sign it by the end of his shift that day. Sharpe testified that he wanted to take a copy of the agreement home for his girlfriend to review, but was not able to because he only had until the end of his shift to sign the agreement. On or about March 24, 2014, Sharpe electronically signed the Arbitration Agreement. *See* Doc. 16-5 at p. 1.  Sharpe is still employed by Defendant.

On May 12, 2014 Plaintiffs' counsel filed, *inter alia,* consents to join this suit signed by Sharpe and McClelland. *See* Docs. 9-17 and 9-24. McClelland signed his consent form on March 18, 2014 and Sharpe signed his consent form on March 29, 2014. *Id.* On July 28, 2014, Defendant filed the instant Motion to Compel Arbitration for Opt-In Plaintiffs, Keith Sharpe and John McClelland.

## II.    Standard of Review

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 3 of the FAA requires that a court, upon motion by a party to an action in federal court, stay the action if it involves an "issue referable to arbitration under an agreement in writing."  9 U.S.C. § 3.  "These provisions manifest a 'liberal federal policy favoring arbitration agreements.'"  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  "Notwithstanding this strong federal policy, however, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.  As a general rule, therefore, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."  *Id.* (internal citations and quotations omitted).

5

"When determining whether a valid arbitration agreement exists, a court should consider both federal policy and applicable state contract law." *Schoendorf v. Toyota of Orlando,* Case No. 6:08-cv-767-Orl-19DAB, 2009 U.S. Dist. LEXIS 33528, 9 (M.D. Fla. Apr. 21, 2009). Under Florida law, the formation of an enforceable contract requires, "an offer, acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *West Const., Inc. v. Florida Backtop, Inc.,* 88 So. 3d 301, 304 (Fla. 4th DCA 2012)(quoting *Savoca Masonry Co. v. Homes & Son Constr. Co.,* 112 Ariz. 392, 542 P.2d 817, 819 (1975)). Whether an express contract has been formed "depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs — not on the parties having meant the same thing but on their having said the same thing." *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.,* 302 So. 2d 404, 407 (Fla. 1974) (citations omitted).

"There are three factors courts consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." *Florida Farm Bureau Ins. Companies v. Pulte Home Corp.,* 2005 WL 1345779 at *3 (M.D. Fla. June 6, 2005); *see also Sims v. Clarendon Nat'l Ins. Co.,* 336 F.Supp.2d 1311, 1326 (S.D. Fla. 2004); *Raymond James Fin. Servs. v. Saldukas*, 896 So.2d 707, 711 (Fla. 2005); *Seifert v. U.S. Home Corp*., 750 So.2d 633, 636 (Fla. 1999). As the party moving to compel arbitration, the burden is on Defendant to make a *prima facie* case showing the existence of an agreement to arbitrate. *In re W. Wiand,* No. 8:10-cv-71-T-17MAP, 2011 U.S. Dist. LEXIS 113162, 2011 WL 4532070, *4 n. 13 (M.D. Fla. June 8, 2011).

### III.    Discussion

Defendant has presented a written agreement to arbitrate and both Sharpe and McClelland admittedly signed the agreement electronically. *See* Doc. 16-2; Doc. 24 at p. 5. Thus, "the burden shifts to the plaintiff to show that even though there was some written contract, he did not actually agree to it—because the signature was forged, the terms of the contract were misrepresented, or some other reason evincing lack of true agreement." *Barkley v. Pizza Hut of Am., Inc.,* Case No. 6:14-cv-376-Orl-37DAB, 2014 U.S. Dist. LEXIS 110640 (M.D. Fla. Aug. 8, 2014).

Plaintiffs argue that the Agreements are not enforceable because Sharpe and McClelland did not sign them "knowingly and voluntarily." However, the Eleventh Circuit has held that "general contract principles govern the enforceability of arbitration agreements and that no heightened 'knowing and voluntary' standard applies, even where the covered claims include federal statutory claims generally involving a jury trial right." *Caley v. Gulfstream Aero. Corp.,* 428 F.3d 1359, 1372 (11th Cir. 2005).

Under Eleventh Circuit precedent, whether the Arbitration Agreement was signed or not, the continued employment of Sharpe and McClelland demonstrates their acceptance of the terms of the Arbitration Agreement. *See Caley,* 428 F.3d at 1369-70. The very first sentence of the Arbitration Agreement in question indicates that it is a condition of continued employment. *See* Doc. 16-2 at p. 1. Under Florida law, continued employment can constitute acceptance of a contractual offer.  *United Healthcare of Fla., Inc. v. Brown*, 984 So.2d 583, 586 (Fla. 4th DCA 2008); *BDO Seidman, LLP v. Bee*, 970 So.2d 869, 875 (Fla. 4th DCA 2007).  In general, contracts can be accepted by performance. Thus, consistent with the Eleventh Circuit's holding in *Caley*, McClelland and Sharpe are parties to an enforceable written agreement to arbitrate with Defendant TBC Retail Group, Inc. "[A]rbitration agreements under the FAA are enforceable absent fraud,

duress, or some other misconduct or wrongful act recognized by the law of contracts for revocation of a contract." *Caley,* 428 F.3d at 1371.

Here, Plaintiffs have made no argument that Florida law supports the revocation of this Arbitration Agreement. Plaintiffs also make no argument that the issues presented by this case are not arbitrable under the agreement.

However, Plaintiffs contend that Defendant waived its right to arbitrate by "engaging in a concerted campaign of confusing, misleading and coercive communications that were clearly and expressly designed to unfairly thwart the right of potential class members to make an informed choice as to whether to participate in this lawsuit." Doc. 24 at p. 11. Plaintiff relies on *Billingsley v. Citi Trends, Inc.,* 560 Fed. Appx. 914 (11th Cir. 2014) to support this argument.

In *Billingsley,* the Eleventh Circuit found that the employer-defendants' communications with the putative class of store managers were "highly coercive" and warranted corrective action by the court in the form of refusing to enforce the arbitration agreement when defendants held private meetings with store managers to discuss the new arbitration agreement and forced them to sign the agreement under threat of possible termination. *Id.* at 918. Defendant correctly notes that the facts of *Billingsley* are distinguishable because the arbitration agreements at issue there were distributed after the lawsuit had been filed and were presented only to putative collective action members. *See* Doc. 47 at p. 2-3.

District courts have the power to exercise discretion and correct the effects of pre-certification communications with potential FLSA collective action members after misleading, coercive, or improper communications are made. *See Billingsley,* 560 Fed. Appx. at 922-923 (collecting cases). Here, however, Plaintiffs have failed to show that such corrective action is necessary. Defendant has established that the Arbitration Agreement had been drafted and its

distribution planned well in advance of Czopek's demand letter. Furthermore, the Arbitration Agreement was presented to all employees – not just putative collective action participants. In fact, the demand letter and draft complaint sent to Defendant on March 13, 2014 only contemplated a collective action of employees similarly situated to Czopek, who was a service manager. *See* Doc. 24-1. Sharpe and McClelland were not service managers and, thus, were not putative class members on the day the Arbitration Agreement was issued. Finally, the Arbitration Agreement was distributed before any lawsuit was filed. Thus, this case is not controlled by *Billingsley* and does not require the Court to intervene or correct any communications between Defendant and its employees regarding the Arbitration Agreement. Accordingly, it is

**ORDERED**:

1.      Defendant's Motion to Compel Arbitration for Opt-In Plaintiffs, Keith Sharpe and John McClelland (Doc. 16) is GRANTED;

2.      Keith Sharpe and John McClelland are compelled to arbitrate their claims against Defendant TBC Retail Group, Inc. as asserted herein; and

3.      The claims asserted by Keith Sharpe and John McClelland in this action are STAYED pending the completion of arbitration.

**DONE AND ORDERED** in Tampa, Florida on November 6, 2014.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any