UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID CZOPEK, CHRISTOPHER
KNOTT, LAWRENCE LEVESON, DAVID
EASLICK and JONATHAN RED,

      Plaintiffs,

v.                                         Case No: 8:14-cv-675-T-36TBM

TBC RETAIL GROUP, INC.,

      Defendant.
_____/

## **O R D E R**

This matter comes before the Court upon the Plaintiffs' Motion for Conditional Certification of Collective Action and Issuance of Notice (Doc. 75) and Defendant's response thereto (Doc. 101). A hearing was held on the motion on May 20, 2015 and supplemental briefing was submitted following that hearing. *See* Docs. 130-133. The parties have also submitted proposed notices to the class. *See* Docs. 134 and 136. The Court, having considered the parties' submissions and arguments, will grant in part and deny in part Plaintiffs' Motion for Conditional Certification of Collective Action and Issuance of Notice.

I.      **Background**

      A.      **Plaintiffs' Allegations**

On December 24, 2014, Plaintiffs David Czopek, David Easlick, Christopher Knott, Lawrence Leveson, and Jonathan Red (collectively "the Named Plaintiffs") filed the currently operative Third Amended Complaint (Doc. 73) ("the Complaint") against Defendant TBC Retail Group, Inc. d/b/a Tire Kingdom ("TBC"). The Complaint is labeled a "216B Collective Action and Rule 23 Class Action Complaint" and asserts four counts:

- Count I: Violation of Overtime Requirements, alleges violations of the Fair Labor Standards Act ("FLSA") on behalf of the "Hourly Employee Class." Doc. 73 ¶¶ 102-111.

- Count II: Violations of Minimum Wages and Overtime Requirements, alleges violations of the FLSA on behalf of the "Tire Tech Class." Doc. 73 ¶¶ 112-120.

- Count III: Use of Pay Cards Violates the FLSA, alleges violations of the FLSA on behalf of the "Debit Card Class." Doc. 73 ¶¶ 121-131.

- Count IV: Unjust Enrichment Class Action Claim for Damages under Federal Rule 23, alleges a common law claim for unjust enrichment on behalf of "the Class." Doc. 73 ¶¶ 132-147.[1]

According to the Complaint, the Named Plaintiffs sought to represent three collective action classes:

> a. The "Hourly Employee Class": All Service Managers, Sales Associates, and Tire Techs who are presently employed or were employed by Defendant in the past three years preceding this lawsuit in the State of Florida who [were] not paid at a rate of one and one-half times their regular rate of pay for all hours worked over forty (40) in a work week and elect to opt-in to the action pursuant to [the] FLSA, 29 U.S.C. § 216(b).

> b. The "Tire Tech Class": All Tire Technicians who are presently employed or were employed by Defendant in the State of Florida within the past three years preceding this lawsuit who were paid an hourly rate of less than the federal minimum wage and who were denied proper overtime compensation for all hours worked over forty (40) in a work week and elect to opt-in to this action pursuant to [the] FLSA, 29 U.S.C. § 216(b).

---

[1] Pursuant to Local Rule 4.04 "within ninety (90) days following the filing of the initial complaint in [a class] action, unless the time is extended by the Court for cause shown, the named plaintiff or plaintiffs shall move for a determination under Rule 23(c)(1) as to whether the case is to be maintained as a class action." Plaintiffs have failed to file such a motion with regard to the Rule 23 class referred to in Count IV and the time for doing so has passed. Thus, it appears that the class action claim asserted in Count IV has been abandoned.

    c.    The "Debit Card Class": All employees working for [TBC] who are presently employed or who were employed in the State of Florida, and who received debit cards issued in payment of wages or salary due.

Doc. 73 ¶ 83. The Motion to Certify, however, seeks certification of three slightly different classes:

    (1) The "Hourly Employee Class." Consisting of all current or former Service Managers, Sales Associates and Tire Techs who were employed by Defendant within the State of Florida during the past three years preceding this lawsuit who were forced or permitted to work "off the clock" without overtime compensation during any given workweek and elect to opt-in to this action pursuant to FLSA, 29 U.S.C. §216(b).

    (2) The "Tire Tech Class." Is (sic) a sub-class of the Hourly Employee Class above, consisting of all current or former Tire Technicians who were employed by Defendant within the State of Florida as a Tire Tech during the past three years who were paid a base hourly wage of $6.40 per hour plus SPIFFs and who elect to opt-in to this action pursuant to FLSA, 29 U.S.C. § 216(b).

    (3) The "Debit Card Class". All hourly and flat rate employees working for Tire Kingdom who are presently employed or who were employed in the State of Florida during the three years immediately preceding the filing of this lawsuit, and who received payroll debit cards issued as payment of wages due and who elect to opt-in to this action pursuant to FLSA, 29 U.S.C. § 216(b).

Doc. 75 ¶ 42. For purposes of this Order, the class definitions set forth in the Motion to Certify will control.

    The Plaintiffs' factual allegations relating to each proposed class are summarized below.

    *1.*    *Off-the-Clock / Time Shaving – Hourly Employee Class*

    Plaintiffs allege that TBC forced or permitted Service Managers, Sales Associates and Tire Techs (together as a group "Hourly Employees") to work "off the clock" without overtime compensation by requiring, coercing and/or allowing employees to work through lunch and after clocking out, or by "shaving" Hourly Employees' hours to reduce Defendant's labor cost obligations. Doc. 73 ¶¶ 62, 64-67; Doc. 75 ¶ 8. TBC maintains an official policy that employees

are prohibited from working "off the clock" and that managers are not allowed to adjust employee time records without express authorization from the employees. Doc. 75 ¶ 9. However, the Plaintiffs allege that TBC maintains an unwritten policy of requiring and permitting off-the-clock work and time-shaving. Doc. 75 ¶ 10; Doc. 77 ¶ 10; Doc. 78 ¶ 10.

### 2.    *Violations of Minimum Wage – Tire Tech Class*

Plaintiffs allege that TBC failed or refused to pay Tire Techs the legally required minimum wage. Doc. 73 ¶ 77; Doc. 75 ¶ 21. Tire Kingdom paid Tire Techs $6.40 per hour in addition to SPIFFs (commissions on certain job activities). Doc. 73 ¶ 77; Doc. 75 ¶ 21. Plaintiffs allege that (a) Tire Techs often did not earn sufficient weekly SPIFFs to meet the minimum wage requirements and that (b) Tire Techs were required to provide their own tools and transportation for the benefit of Tire Kingdom which reduced their compensation to below minimum wage. Doc. 73 ¶¶ 77-78; Doc. 75 ¶ 21.

### 3.    *Access to Wages - The Debit Card Class*

Plaintiffs allege that TBC violated the FLSA by requiring hourly and flat-rate employees to accept their wages on payroll debit cards (instead of cash or checks) that are/were subject to excessive transaction fees. Doc. 73 ¶ 69; Doc. 75 ¶ 29. Under the FLSA, wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." *See* 29 C.F.R. § 531.35. Plaintiffs allege that, by issuing the payroll debit cards that were not redeemable for cash and were subject to substantial transaction fees, TBC failed to comply with 29 C.F.R. §531.27(a) (requiring that all wage payments are to be made in cash or negotiable instrument). Doc. 73 ¶ 79; Doc. 75 ¶ 29. Further, Plaintiffs claim that TBC failed to disclose the fees associated with the payroll debit cards; failed to offer employees the option of obtaining a paper check or cash in lieu of the debit card; and did

not list the name and address of an established place of business in the State of Florida at which employees could receive cash on demand in exchange for the payroll debit cards. Doc. 75 ¶ 29.

### B.    The Named Plaintiffs

#### 1.    DAVID CZOPEK ("Czopek")

Czopek has been employed by TBC since April of 2011 as a Service Manager at the following locations: Dale Mabry, Henderson Blvd., North Palmetto, Pinellas Park, Lutz, Wesley Chapel, Holiday, Plant City, and Highway 301. Doc. 73 ¶ 18; Doc. 79. Czopek was paid $12.00 per hour in addition to non-discretionary incentive awards including SPIFFs, sales commissions, and monthly bonuses. *Id.* ¶ 19. Czopek worked sixty to eighty hours per work week but claims that he was subjected to time shaving and regularly required to work off-the-clock (including through lunch breaks) without compensation. *Id.* ¶¶ 20-21. Czopek further alleges that he was paid wages through Defendant's use of a debit card system, for which he was subjected to fees, surcharges and limitations on his ability to use his wages. *Id.* ¶ 22.

#### 2.    LAWRENCE LEVESON ("Leveson")

Leveson was employed by TBC from June 2010 through November 2012 as a Service Manager at several of TBC's retail store locations including Palm River and Plant City. *Id.* ¶ 26. Leveson was paid $12.00 per hour in addition to non-discretionary incentive awards including SPIFFs, sales commissions, and monthly bonuses. *Id.* ¶ 27. Leveson worked sixty to eighty hours per work week but claims that he was subjected to time shaving and regularly required to work off-the-clock (including through lunch breaks) without compensation. *Id.* ¶¶ 28-29. Leveson further alleges that he was paid wages through Defendant's use of a debit card system, for which he was subjected to fees, surcharges and limitations on his ability to use his wages. *Id.* ¶ 30.

3.    CHRISTOPHER KNOTT ("Knott")

Knott was employed by TBC as a Flat Rate Technician (i.e. mechanic) at TBC's Plant City location from September 2011 through August 2013. *Id.* ¶ 34.[2] Knott was paid through Defendant's debit card system, for which he was subjected to fees, surcharges and limitations on his ability to use his wages. *Id.* ¶ 35. Knott was not given a choice to receive his wages via direct deposit or physical check and was unable to fully access his wages free and clear at his demand. *Id.* ¶¶ 36-37.

4.    DAVID EASLICK ("Easlick")

Easlick was employed at TBC's Palm River location as a Tire Technician ("Tire Tech") from May 2012 through December 2012, and then as a Sales Associate until September 3, 2013. *Id.* ¶ 41; Doc. 84. As a Tire Tech, Easlick was paid $6.40 per hour plus SPIFFs and $9.60 per hour for overtime. Doc. 73 ¶¶ 42-43. As a Sales Associate, he was paid $8.00 per hour plus sales commissions. *Id.* ¶ 44. Easlick claims that he was subjected to time shaving and regularly required to work off-the-clock (including through lunch breaks) without compensation. *Id.* ¶ 45. Easlick was also paid through Defendant's debit card system, for which he was subjected to fees, surcharges and limitations on his ability to use his wages. *Id.* ¶ 47.

5.    JONATHAN RED ("Red")

Red was employed by TBC as a Sales Associate at five different retail store locations between February 2006 and September 2013. *Id.* ¶ 50. Red was paid $8.00 per hour in addition to non-discretionary incentive awards including SPIFFs, sales commissions, and monthly bonuses. *Id.* ¶ 51. Red regularly worked sixty hours per week but claims that he was subjected to time shaving and regularly required to work off-the-clock (including through lunch breaks) without

---

[2] Based on his consent to join, it appears that Knott also worked at three other stores from September of 2005 through September of 2009, but those dates fall outside the relevant time period for this action. *See* Doc. 9-14.

compensation. *Id.* ¶¶ 52-53. Red further alleges that he was paid wages through Defendant's use of a debit card system, for which he was subjected to fees, surcharges and limitations on his ability to use his wages. *Id.* ¶ 54.

### C.    The Opt-In Plaintiffs

Plaintiffs have filed consents to join and/or declarations executed by 36 present and former TBC employees, including the five Named Plaintiffs. Some of these individuals are automatically excluded from the proposed classes:

> 1.    *Bobby Brown and Donald Williamson were both store managers and, therefore, not part of any class[3];*
>
> 2.    *Christopher Robert Beher (Doc. 9-3) worked for TBC only from May of 2009 to April of 2010, so any claims he may have clearly fall outside even the most liberal statute of limitations; and*
>
> 3.    *McClelland and Sharpe have already been eliminated from this suit based on their arbitration agreements with TBC.*

This leaves us with 31 potential plaintiffs, including the five Named Plaintiffs. Only one of them, Troy Bair, worked at a TBC location outside of the Middle District of Florida.

## II.    Standard of Review

The decision to conditionally certify a collective FLSA action lies within the sound discretion of the Court. *Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001). However, the Court "should satisfy itself" that there are similarly situated employees who desire to opt-in before certifying a collective action. *Dybach v. State of Fla. Dept. of Corrections*, 942

---

[3] Defendant argues that Dwight Samuel was a store manager as well, however, his consent form indicates that he also worked as a service manager. Thus, he cannot be excluded at this time.

F.2d 1562, 1567-68 (11th Cir. 1991). Within the Eleventh Circuit, district courts are encouraged, but not required to adopt a two-tiered approach to certification of classes in an FLSA case. *Hipp*, 252 F.3d at 1219.

Under this two-tiered approach, the court's initial decision to conditionally certify a collective action often comes early in the case. In making this decision, the court must first "satisfy itself that there are other employees ... [(1)] who desire to 'opt-in' and [(2)] who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Chung v. Affordable Battery, Inc.,* Case No. 12–60612–CIV, 2012 WL 3759029, 1 (S.D. Fla. Aug. 29, 2012) (quoting *Dybach,* 942 F.2d and 1567). At the first tier, the Court's certification decision is based primarily on pleadings and affidavits, and the Court applies a "fairly lenient standard" in determining whether the plaintiffs are similarly situated. *Anderson v. Cagle's Inc.,* 488 F.3d 945, 953 (11th Cir. 2007).

At this early stage, the named plaintiff carries the burden of demonstrating that notice of the action should be given to other employees. Although this burden is low and can often be met by "detailed allegations supported by affidavits," *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996), it is not "invisible" and cannot be based on the conclusory allegations of a few employees. *Brooks v. Rainaldi Plumbing, Inc.,* Case No. 06-CV-631, 2006 WL 3544737, 2 (M.D. Fla. Dec. 8, 2006); *see also Simpkins v. Pulte Home Corp.,* Case No. 08-CV-130, 2008 WL 3927275, 2 (M.D. Fla. Aug. 21, 2008). At a minimum, the named plaintiff should offer affidavits or declarations of consent to join by other individuals stating they are similarly situated and wish to join the suit. *See, e.g., Sanchez v. Ocwen Loan Servicing, LLC*, Case No. 06:06-CV-1811, 2007 WL 809666, 2 (M.D. Fla. Mar. 14, 2007). When there are ambiguities in the papers seeking collective action status, the court must draw all inferences in favor of the plaintiff at the preliminary

8

certification stage. *Mendoza v. Ashiya Sushi 5, Inc.,* No. 12 Civ. 8629(KPF), 2013 WL 5211839, 3 (S.D.N.Y. Sept. 16, 2013).

Here, TBC argues that a stricter standard should be applied to Plaintiff's motion because, unlike in *Hipp*, there has been extensive discovery here and the Court has been presented with numerous declarations by both sides. "In *White* [*v. Osmose, Inc.,* 204 F. Supp. 2d 1309, 1313 n.2 (M.D. Ala. 2002)], Chief Judge Albritton wrote that because the plaintiff had had extensive discovery with respect to the defendant's policies, 'the court deems it necessary to carefully consider the submissions of the parties with respect to the class allegations.'" *Davis v. Charoen Pokphand (USA), Inc.,* 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004). This Court agrees that the evidence presented by all parties should be considered carefully, but a careful review of the evidence does not change the standard to be applied. The Court is still tasked with deciding whether notice is appropriate, but conceivably has more evidence – from both sides – to consider when making the decision.

## III.    Discussion

"[A]t the conditional-certification stage, the question before the Court is (1) whether other employees of the defendant employer desire to opt-in; and (2) whether these other employees are "'similarly situated' with respect to their job requirements and with regard to their pay provisions.'" *Rojas v. Garda CL Southeast, Inc.,* 297 F.R.D. 669, 675 (S.D. Fla. 2013) (citing *Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1282-83 (S.D. Fla. 2012); *Dybach,* 942 F.2d at 1567-68. "[I]n making a determination in whether to conditionally certify a proposed class for notification purposes only, courts do not review the underlying merits of the action." *Pares v. Kendall Lakes Auto., LLC,* No. 13-20317, 2013 WL 3279803, 3 (S.D. Fla. June 27, 2013).

> In determining whether potential class members are similarly situated, the Court considers

> (1) whether the plaintiffs all held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; and (5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar.

*Gonzalez v. Winn-Dixie Stores, Inc.,* Case No. 14-20792-CIV-ALTONAGA, 2014 U.S. Dist. LEXIS 130930, 7-8 (S.D. Fla. Sept. 18, 2014) (internal citations omitted).

### A.      The Hourly Employee Class

As previously noted, the proposed "Hourly Employee Class" consists of all current or former Service Managers, Sales Associates and Tire Techs who were employed by Defendant within the State of Florida during the past three years preceding this lawsuit who were forced or permitted to work "off the clock" without overtime compensation during any given workweek and elect to opt-in to this action pursuant to FLSA, 29 U.S.C. §216(b).

The Named Plaintiffs that fall within this class are Czopek (service manager), Easlick (tire tech and sales associate), Red (sales associate), and Leveson (service manager). These Named Plaintiffs worked at the following locations: 103 (Palm River), 95 (Plant City), 3 (Dale Mabry), 10 (Henderson Blvd.), 13 (North Palmetto), 30 (Pinellas Park), 158 (Lutz), 199 (Wesley Chapel), 102 (Highway 301), 90 (Brandon), 64 (Winter Haven), 49 (South Lakeland), 201 (Auburndale) and 164 (Seffner).

The proposed class would have the same job titles as the Named Plaintiffs during the same general time frame as the Named Plaintiffs. The proposed class has also been limited by the type of violation – off-the-clock work – so that the putative class members and the Named Plaintiffs all assert similar alleged violations. However, the proposed class covers a much larger geographic area than is represented by the Named Plaintiffs. The proposed class encompasses the entire state

of Florida, but the named Plaintiffs worked only in the west-central Florida area. Thus, the geographic scope of the class must be limited. The Defendant has indicated that the State of Florida is broken up into three regions and eighteen districts. However, neither party has informed the Court which stores fall within which regions or districts.

Plaintiffs' evidence indicates that store managers received direction from district managers to allow or force employees to work off-the-clock. *See* Doc. 77 at ¶ 10; Doc. 78 ¶ 10. Accordingly, the Court will limit this class to the district or districts that encompass the stores worked in by the named Plaintiffs, which are: 103 (Palm River), 95 (Plant City), 3 (Dale Mabry), 10 (Henderson Blvd.), 13 (North Palmetto), 30 (Pinellas Park), 158 (Lutz), 199 (Wesley Chapel), 102 (Highway 301), 90 (Brandon), 64 (Winter Haven), 49 (South Lakeland), 201 (Auburndale) and 164 (Seffner). This limitation should also increase the likelihood that the putative class members and the Named Plaintiffs were subject to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker – the relevant decision-makers, because Plaintiffs' allegations suggest that district managers instructed store managers to violate TBC's policies by allowing off-the-clock work and shaving time. *See e.g., Robbins-Pagel v. Puckett, Inc.,* No. 6:05-cv-1582-Orl-31DAB, 2006 WL 3393706, 3 (M.D. Fla. 2006) (limiting class to one county).

Defendant has argued that Plaintiffs have not shown enough interest by other current and former employees to warrant conditional certification. According to Defendant, Plaintiffs have submitted consents to join of less than 1% of the proposed class (35/6600 = 0.53%). Doc. 101 at p. 5. However, while Defendant has filed a greater number of affidavits from potential members of the proposed classes stating that they do not want to join, that number is still less than 1% of the entire proposed class (59/6600 = 0.89%). Furthermore, with the geographic limitations

11

imposed by this Court, the proposed class should be substantially less than 6,600 people, making Plaintiffs' percentage more substantial. In any event, there is no magical number of interested individuals that an FLSA plaintiff has to find to support conditional certification. In fact, other courts have concluded that the submission of a single affidavit or consent to join the case by one other similarly situated individual can be sufficient. *See Guerra v. Big Johnson Concrete Pumping, Inc.,* No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (finding a single affidavit from another individual than the named plaintiff was sufficient to establish "a minimum quantum of evidence to warrant the creation of a collective [action]."); *Gonzalez v. Go Relax Travel, LLC,* 2009 U.S. Dist. LEXIS 106523 (S.D. Fla. 2009). *See also Robbins-Pagel v. Puckett,* No. 6:05-cv-1582-Orl-31DAB, 2006 WL 3393706, 2 (M.D. Fla. Nov. 22, 2006) (finding two affidavits sufficient).

One other issue remains – a number of putative class members have executed the same arbitration agreements that former opt-in plaintiffs Sharpe and McClelland have executed. This Court has already ruled that those agreements are valid and prohibit participation in this lawsuit. Accordingly, any class must exclude employees who have signed such agreements. Plaintiffs argue that only employees who signed the agreements on or after March 13, 2014 should be excluded from the class, because that was the date that TBC rolled out the agreement to the entire company. *See* Doc. 131. However, there is no legal basis for including people in the class who signed agreements prior to the final roll-out.

The Defendant also argues that the class should be further limited in time. Plaintiffs' seek to send notice to current and former employees that worked for TBC during the three years prior to the lawsuit being filed. The FLSA statutes of limitations are 3 years for willful violations and 2 years for non-willful violations. *See* 29 U.S.C. § 255. Plaintiffs here have alleged that all violations

12

by TBC are willful. In collective actions, each plaintiff's claim is considered made when their consent to join is filed. *See, e.g., Gutescu v. Carey Int'l, Inc.*, Case Number: 01-4026-CIV-MARTINEZ, 2004 WL 5333763, 4 (S.D. Fla. Feb. 25, 2004) ("an Opt-in Plaintiff's suit is not commenced until he files his consent with the Court."). Therefore, a plaintiff who files a consent to join on June 1, 2015, for example, would be able to claim damages for willful damages as far back as June 1, 2012. Here, Plaintiffs filed a separate motion requesting equitable tolling of the statutes of limitations from the time the motion for certification was filed – December 29, 2014. *See* Doc. 134. By separate order, that motion will be denied. Thus, the Court will allow notice to be sent to putative class members who worked for Defendant within the past three years.

Accordingly, the Plaintiffs will be authorized to send notice of the collective action to:

> all current or former Service Managers, Sales Associates and Tire Technicians who are not party to an arbitration agreement with Defendant and who were employed by Defendant at any store within the same district(s) that encompass the following stores at any time during the past three years: 103 (Palm River), 95 (Plant City), 3 (Dale Mabry), 10 (Henderson Blvd.), 13 (North Palmetto), 30 (Pinellas Park), 158 (Lutz), 199 (Wesley Chapel), 102 (Highway 301), 90 (Brandon), 64 (Winter Haven), 49 (South Lakeland), 201 (Auburndale) and 164 (Seffner).

The "Hourly Class" will thus be defined as:

> all current or former Service Managers, Sales Associates and Tire Technicians who are not party to an arbitration agreement with Defendant and who were employed by Defendant at any store within the same district(s) that encompass the following stores at any time during the past three years: 103 (Palm River), 95 (Plant City), 3 (Dale Mabry), 10 (Henderson Blvd.), 13 (North Palmetto), 30 (Pinellas Park), 158 (Lutz), 199 (Wesley Chapel), 102 (Highway 301), 90 (Brandon), 64 (Winter Haven), 49 (South Lakeland), 201 (Auburndale) and 164 (Seffner); and who allege timely FLSA violations by the Defendant regarding failure to pay minimum or overtime wages due for all hours worked.

The form of the notice and process for notification will be discussed below.

### B.      The Tire Tech Class

The proposed Tire Tech Class is a "sub class" of the Hourly Employee Class and would include all current or former Tire Technicians who were employed by Defendant within the State of Florida as a Tire Tech during the past three years who were paid a base hourly wage of $6.40 per hour plus SPIFFs and who elect to opt-in to this action pursuant to FLSA, 29 U.S.C. § 216(b). Plaintiffs allege that Tire Techs falling within this category were sometimes paid less than minimum wage for the hours they worked and had to supply their own tools, which had the effect of bringing down their hourly wages further.

The only Named Plaintiff that could possibly fall within this definition is Easlick, who worked as a Tire Tech at the Palm River location from May 2012 through December 2012. However, there is no allegation that Easlick was ever paid less than minimum wage for any hour he worked for TBC as a Tire Tech or that he was required to purchase his own tools for work. *See* Doc. 84. Without any named plaintiff similar to this proposed class, the Court will not conditionally certify the class.

### C.      The Debit Card Class

Finally, the Plaintiffs seek conditional certification of the "Debit Card Class" which includes all hourly and flat rate employees[4] working for Tire Kingdom who are presently employed or who were employed in the State of Florida during the three years immediately preceding the filing of this lawsuit, and who received payroll debit cards issued as payment of wages due and who elect to opt-in to this action pursuant to FLSA, 29 U.S.C. § 216(b). All of the Named Plaintiffs appear to fall within this class.

---

[4] It appears from the parties' filings that all flat-rate employees are mechanics.

The proposed class would have the same job titles as the Named Plaintiffs during the same general time frame as the Named Plaintiffs. The Named Plaintiffs include both hourly employees and one flat-rate employee (Knott). The proposed class has also been limited by the type of violation so that the putative class members and the Named Plaintiffs all assert similar alleged violations. However, once again, the proposed class covers a much larger geographic area than is represented by the Named Plaintiffs. The proposed class encompasses the entire state of Florida, but the named Plaintiffs worked only in the west-central Florida area. Indeed, all but one of the opt-in plaintiffs that would fall within this purported class worked in that geographic area.

The Defendant has indicated that notifying the entire proposed class would encompass approximately 6,600 employees. Some individual inquiries would be required of each class member, i.e. how they received the card, whether they chose to receive wages on the card, whether they received documentation with the card, what that documentation was, whether they attempted to access the money "free and clear" at any time, etc. Therefore, a class of 6,600 plaintiffs would likely be unmanageable. Thus, the geographic scope of the class must be limited. Accordingly, the Court will limit this class to the district or districts that encompass the stores worked in by the Named Plaintiffs, which are: 103 (Palm River), 95 (Plant City), 3 (Dale Mabry), 10 (Henderson Blvd.), 13 (North Palmetto), 30 (Pinellas Park), 158 (Lutz), 199 (Wesley Chapel), 102 (Highway 301), 90 (Brandon), 64 (Winter Haven), 49 (South Lakeland), 201 (Auburndale) and 164 (Seffner).

Again, a number of putative class members have executed the same arbitration agreements that former opt-in plaintiffs Sharpe and McClelland have executed. Thus, the same limitation appropriate to the Hourly Class is appropriate here. As previously discussed, at this time, the Court will allow notice to be sent to putative class members who worked for Defendant within the past three years.

15

Accordingly, the Plaintiffs will be authorized to send notice of the collective action to:

> all hourly and flat rate employees who are presently employed or who were employed by the Defendant in the district(s) encompassing the following stores during the past three years, who are not parties to arbitration agreements with Defendant, and who received payroll debit cards issued as payment of wages due: 103 (Palm River), 95 (Plant City), 3 (Dale Mabry), 10 (Henderson Blvd.), 13 (North Palmetto), 30 (Pinellas Park), 158 (Lutz), 199 (Wesley Chapel), 102 (Highway 301), 90 (Brandon), 64 (Winter Haven), 49 (South Lakeland), 201 (Auburndale) and 164 (Seffner).

The "Debit Card Class" with thus be defined as:

> all hourly and flat rate employees who are presently employed or who were employed by Defendant in the district(s) encompassing the following stores during the past three years, who are not parties to arbitration agreements with Defendant, and who received payroll debit cards issued as payment of wages due: 103 (Palm River), 95 (Plant City), 3 (Dale Mabry), 10 (Henderson Blvd.), 13 (North Palmetto), 30 (Pinellas Park), 158 (Lutz), 199 (Wesley Chapel), 102 (Highway 301), 90 (Brandon), 64 (Winter Haven), 49 (South Lakeland), 201 (Auburndale) and 164 (Seffner); and who allege timely FLSA violations by Defendant because they were required to receive wages via payroll debit cards.

The form of the notice and process for notification will be discussed below.

## IV.   Form of Notice

Plaintiffs have filed proposed notices to send to the potential collective action members. *See* Doc. 133. Defendant filed objections to those proposed notices as well. *See* Doc. 135. "Court-authorized notice in a class action context helps to prevent "misleading communications," and ensures that the notice is "timely, accurate, and informative." *Sealy v. Keiser Sch., Inc.,* No. 11-61426-CIV, 2011 WL 7641238, 4 (S.D. Fla. Nov. 8, 2011) (quoting *Hoffmann-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 171-172 (1989)). "In the exercise of its discretion, the court should screen the proposed notice to prevent potential plaintiffs from receiving information which is 'factually inaccurate, unbalanced, or misleading.'" *Earle v. Convergent Outsourcing, Inc.,* No. 2:12-CV-

1050-WKW, 2013 WL 6252422, 5 (M.D. Ala. Sept. 5, 2013) (quoting *Maddox v. Knowledge Learning Corp.*, 499 F.Supp.2d 1338, 1344 (N.D. Ga. 2007)).

First, Defendant objects to the notices because they have an "incorrect statute of limitations", lack a geographic limitation, and fail to exclude employees who signed arbitration agreements. The Court has discussed those issues above, and the class definitions that will be inserted into the notices will address these matters.

Defendant next objects to the notices' references to Plaintiff's counsel's website and what Defendant refers to as "inappropriate solicitations." The Court agrees that the references to the websites, which are represented by blank web addresses in the proposed notices, are inappropriate. The Court has no knowledge of what these websites may contain and will not allow counsel to refer to them in a court-authorized notice. The Court also agrees that the proposed notices should be edited with regard to the section titled "Can I be fired or retaliated against if I participate in the Class?" in that it instructs individuals to contact Class Counsel if they believe they have been retaliated against. Therefore, the Court has modified this section as well.

The proposed notices submitted by the Plaintiffs are also deficient in that they do not advise potential class members of the obligations and responsibilities they incur if they join the lawsuit. For example, they do not inform the potential opt-in plaintiffs that they may be required to participate in discovery or trial and, therefore, may be called to physically appear here in the Middle District of Florida. *See Sealy,* 2011 WL 7641238 at 4 (finding that the proposed class notice failed to fully advise potential class members of the consequences of opting into the suit, including that defendant may attempt to recover its costs from the potential class members if the lawsuit is unsuccessful and that the potential class members may be required to appear for trial); *Gonzalez v. TZ Ins. Solutions,* LLC, Case No. 8:13–cv–2098–T–33EAJ, 2014 WL 1248154, 5 (M.D. Fla.

Mar. 26, 2014) (same); *Earle*, 2013 WL 6252422 at 5 ("participation [of] plaintiffs may obligate them to provide discovery, give depositions, or testify in court, and that these obligations might require travel").

The proposed notices also indicate that Plaintiffs will not be liable for attorneys' fees. However, "unless [the N]amed Plaintiffs choose to separately enter into agreements with the opt-ins that waive their liability for attorney's fees, these opt-ins may indeed be liable for attorney's fees and costs." *Rojas v. Garda CL Southeast, Inc.,* 297 F.R.D. 669, 681 (S.D. Fla. 2013) (citing *Mayer v. Wall St. Equity Grp., Inc.,* 514 F. App'x 929, 932 (11th Cir. 2013); *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1437 (11th Cir. 1998) (noting that the FLSA entitles a prevailing defendant to attorney's fees and costs when the district court finds that the plaintiff litigated in bad faith)). Thus, the Form should notify plaintiffs that they may be liable for attorneys' fees and costs if there is no judgment in their favor. Additionally, the proposed notice fails to indicate that the recipient can retain or consult counsel of his choosing before agreeing to join this lawsuit.

Finally, the Court agrees with Defendant that the proposed notices could be read to indicate judicial endorsement or sponsorship of the action. The Supreme Court has expressly cautioned that a district court "must be scrupulous to respect judicial neutrality" and "avoid even the appearance of judicial endorsement of the action" when issuing notice to potential plaintiffs. *Hoffman–La Roche*, 493 U .S. at 174. The Court has revised the language to recognize that the Court has made no decisions on the merits of this action. However, it is customary that a notice be styled with the court's name as the heading. *See, e.g., McLean v. Cleaning Servs., Inc.,* No. 3:11–cv–874–MEF (M.D. Ala. June 28, 2012) (order granting motion to issue class notice and approving notice form with court's name in heading). Thus the notice may contain the Court name, as part of the case style, at the top of the first page.

Accordingly, the Court has revised the proposed notice to conform to this Order. The approved forms of notice are attached hereto as Exhibit A (Hourly Class) and Exhibit B (Debit Card Class). Defendant has not objected to Plaintiffs' proposed Consent to Join forms, therefore, those proposed forms may be included with the Court-approved notice.

It is hereby **ORDERED** that:

1.      Plaintiffs' Motion for Conditional Certification of Collective Action and Issuance of Notice (Doc. 75) is **GRANTED** in part and **DENIED** in part.

2.      Defendant shall produce to Plaintiff, within 30 days of the date of this Order, the names and last known addresses of:

> a.  all current or former Service Managers, Sales Associates and Tire Technicians who are not party to an arbitration agreement with Defendant and who were employed by Defendant at any store within the same district(s) that encompass the following stores at any time during the past three years: 103 (Palm River), 95 (Plant City), 3 (Dale Mabry), 10 (Henderson Blvd.), 13 (North Palmetto), 30 (Pinellas Park), 158 (Lutz), 199 (Wesley Chapel), 102 (Highway 301), 90 (Brandon), 64 (Winter Haven), 49 (South Lakeland), 201 (Auburndale) and 164 (Seffner); and

> b.  all hourly and flat rate employees who are presently employed or who were employed by Defendant in the district(s) encompassing the following stores during the past three years, who are not parties to arbitration agreements with Defendant, and who received payroll debit cards issued as payment of wages due: 103 (Palm River), 95 (Plant City), 3 (Dale Mabry), 10 (Henderson Blvd.), 13 (North Palmetto), 30 (Pinellas Park), 158 (Lutz), 199

(Wesley Chapel), 102 (Highway 301), 90 (Brandon), 64 (Winter Haven), 49 (South Lakeland), 201 (Auburndale) and 164 (Seffner).

3.      Counsel for Plaintiff is authorized to distribute the approved form of notice and consent to join via first class U.S. Mail within 30 days of receiving the contact information from Defendant.

4.      Each "Consent to Join" returned to plaintiffs' counsel must be post-marked, or delivered to a commercial carrier who provides a receipt, on or before **December 7, 2015**.

5.      Counsel for Plaintiffs shall file all consents to join with the Court on or before **December 15, 2015**.

6.      During the allowed period for response to this initial mailing, should the initial "Notice of Right to Join" mailed to any individual be returned as un-deliverable, the parties shall promptly cooperate and exchange such additional information in their custody or control, or in the custody or control of their agents, as may reasonably be available to identify a better address for each such individual, to assist in the search for better addresses. To the extent that it is feasible, but in no event later than the end of the allowed period for response to the initial mailing, plaintiffs' counsel shall, at the sole cost and expense of plaintiffs, re-mail one time the "Notice of Right to Join" to each such individual. For each re-mailed "Notice of Right to Join," it shall be in the form set forth above; shall be re-dated with the date of re-mailing, and shall give the individual up to the same deadline allowed for response to the initial mailing to return a "Consent to Join" and no additional time.

7.      Individuals who timely opt into this collective action pursuant to this Court's supervised notice procedure shall be deemed joined as opt-in plaintiffs for all purposes under the Federal Rules of Civil Procedure and under the orders of this Court through trial and appeal, if

any, subject to any motion for decertification or representative discovery, and may be represented at any settlement, mediation or trial by the named plaintiffs at the time, pending further orders of the Court.

8.      In light of the deadlines above, the parties shall submit an Amended Case Management Report within fourteen (14) days of this Order proposing new deadlines.

**DONE AND ORDERED** in Tampa, Florida on August 7, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any